# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0016

In the Matter of the Application of North Dakota Pipeline Company LLC
for a Certificate of Need for the Sandpiper Pipeline Project in Minnesota.

In the Matter of the Application of North Dakota Pipeline Company LLC
for a Pipeline Routing Permit for the Sandpiper Pipeline Project in Minnesota.

**Filed September 14, 2015**
**Reversed and remanded**
**Klaphake, Judge**[*]

Public Utilities Commission
File No. PL-6668/CN-13-473, PL-6668/PPL-13-474

Leigh K. Currie, Kathryn M. Hoffman, Minnesota Center for Environmental Advocacy, St. Paul, Minnesota (for relator Friends of the Headwaters)

Lori Swanson, Attorney General, Alethea M. Huyser, Leah M. P. Hedman, Max Kieley, Assistant Attorneys General, St. Paul, Minnesota (for respondent Minnesota Public Utilities Commission)

Richard D. Snyder, John E. Drawz, Patrick D.J. Mahlberg, Fredrikson & Byron, P.A., Minneapolis, Minnesota (for respondent North Dakota Pipeline Company LLC)

Gerald W. Von Korff, Rinke Noonan, St. Cloud, Minnesota (for amicus curie Carlton County Land Stewards)

        Considered and decided by Rodenberg, Presiding Judge; Cleary, Chief Judge; and

Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## SYLLABUS

When certificate of need proceedings precede routing permit proceedings for a large oil pipeline, the Minnesota Environmental Policy Act requires that an environmental impact statement be completed before a final decision is made on the certificate of need.

## OPINION

**KLAPHAKE**, Judge

Relator argues that conducting certificate of need proceedings for a large oil pipeline prior to the completion of an environmental impact statement violates the Minnesota Environmental Policy Act (MEPA). All parties agree that the pipeline is subject to environmental review under MEPA, but this review is set to occur during the routing permit proceedings after a certificate of need has been granted. Because the decision to grant a certificate of need for a large oil pipeline constitutes a major governmental action that has the potential to cause significant environmental effects, we conclude that MEPA requires an environmental impact statement to be completed before a final decision is made to grant or deny a certificate of need. Accordingly, we reverse and remand for respondent Minnesota Public Utilities Commission (MPUC) to reconsider whether to issue a certificate of need after an environmental impact statement has been completed.

**FACTS**

Relator Friends of the Headwaters (FOH) challenges the MPUC's order to proceed with a final decision on a certificate of need for a large oil pipeline, arguing that to do so without preparing the required environmental analysis will violate the MEPA.

In November 2013, intervenor North Dakota Pipeline Company LLC (NDPC) filed applications for a certificate of need and a pipeline routing permit with the MPUC to construct a 612-mile pipeline to transport crude oil from Tioga, North Dakota to terminals in Clearbrook, Minnesota and Superior, Wisconsin. Approximately 300 miles of the proposed pipeline would cross northern Minnesota carrying between 225,000 and 375,000 barrels of oil per day.

In February 2014, the MPUC accepted the applications as substantially complete and referred both matters to the Minnesota Office of Administrative Hearings for joint contested case proceedings on the certificate of need and routing permit. The MPUC also directed the Energy Environmental Review and Analysis unit (EERA) of the Minnesota Department of Commerce to facilitate the development of alternative route proposals to those proposed by NDPC.

In March, EERA held seven public meetings in six counties along the proposed pipeline route. More than 1,000 comments were submitted by 940 commenters and organizations in response to the notice for comments. After reviewing these extensive comments, EERA identified 62 alternative project proposals for consideration as part of the ongoing proceedings. In identifying these proposals EERA made a distinction between proposed route and system alternatives. Consistent with previous MPUC

dockets, "route" alternatives were defined "as a deviation from the [NDPC's] proposed route to address a concern or issue and met the stated purpose and need of the proposed project with no apparent major engineering or environmental issues." In contrast, a "system" alternative represented "a pipeline route that is generally separate or independent of the pipeline route proposed by [NDPC], and that does not connect to the specified Project endpoints (the North Dakota border to Clearbrook and Clearbrook to Superior, Wisconsin)." EERA designated 8 of the identified proposals as system alternatives and 54 as route alternatives.

After additional comments and a public hearing, the MPUC accepted 53 of the route alternatives and one of the system alternatives for consideration in the routing permit contested case hearing. Around the same time, many organizations and agencies raised concerns about conducting the certificate of need and routing permit proceedings jointly based on the complexity of the issues facing the parties and the MPUC.

In September, the MPUC held a public hearing on the issue of bifurcating the proceedings and staying the routing permit proceedings pending completion of the certificate of need proceedings. At the hearing, the Minnesota Pollution Control Agency (MPCA) and the Minnesota Department of Natural Resources (DNR), as well as EERA recommended bifurcating the proceedings, with the certificate of need proceedings occurring first. These parties also urged the MPUC to forward the remaining system alternatives for consideration during the certificate of need proceedings. FOH and Amicus Carlton County Land Stewards supported bifurcating the proceedings, but also argued that MEPA required the MPUC to prepare an environmental impact statement

4

(EIS) evaluating both route and system alternatives prior to making a final decision in the certificate of need proceedings. NDPC opposed both the proposed bifurcation of proceedings and further consideration of the remaining system alternatives as part of the certificate of need process. NDPC also argued that preparation of an EIS at the certificate of need stage in bifurcated proceedings would be unnecessary and inappropriate, because a MEPA-compliant environmental review was already required as part of the routing permit proceedings.

In October, the MPUC ordered that the certificate of need and routing permit proceedings be bifurcated, with the certificate of need proceedings to be completed first. The MPUC also determined that six of the remaining system alternatives should be evaluated as part of the certificate of need proceedings, while the 53 route alternatives and one system alternative would still be reviewed during the routing permit proceedings. Finally, the MPUC directed EERA to conduct a "high-level" environmental review of the six system alternatives to be considered during the certificate of need proceedings. While the MPUC concluded that such a review would assist in developing the record, it acknowledged that this environmental review would "not be equivalent in terms of the specificity and level of detail to a comparative environmental analysis undertaken in the route permit proceeding." FOH petitioned for reconsideration, which the MPUC denied. This certiorari appeal follows.

**ISSUES**

Does MEPA require the completion of an environmental impact statement before the MPUC makes a final decision on a certificate of need for a large oil pipeline?

5

## ANALYSIS

This court will affirm an administrative agency's decision unless its findings, inferences, conclusions or decisions are:

> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
> (f) arbitrary or capricious.

Minn. Stat. § 14.69 (2014). This court affords the decision of an administrative agency "a presumption of correctness" and defers to its expertise. *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 278-79 (Minn. 2001). That deference extends to the agency's interpretation of a statute it is charged with enforcing only if the statute in question is ambiguous and the agency's interpretation is "one of long standing." *In re Annandale NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 514 (Minn. 2007). But this court does not defer to an agency's statutory interpretation when the language "is clear and capable of understanding." *Id.* at 513. Rather, this court effectuates the intent of the legislature by interpreting the text of the statute according to its plain language. *Minn. Transitions Charter Sch. v. Comm'r of Minn. Dep't of Educ.*, 844 N.W.2d 223, 227 (Minn. App. 2014), *review denied* (Minn. May 28, 2014). This includes consideration of the statute "as a whole," accounting for the context of the surrounding words and sentences. *In re Minn. Power*, 838 N.W.2d 747, 754 (Minn. 2013).

6

All parties agree that a MEPA-compliant environmental review must be completed at some point during the pipeline approval process. The sole issue on appeal is when that review must be carried out. Traditionally, certificate of need and routing permit proceedings for pipelines have been conducted jointly. Under the routing permit requirements in Chapter 7852 of the Minnesota administrative rules, an applicant must conduct a comprehensive environmental assessment. *See* Minn. R. 7852.1500 (2013). The Minnesota Environmental Quality Board (EQB) has approved this environmental assessment as an acceptable alternative to the formal EIS otherwise required by MEPA for large oil pipelines. *See* Minn. Stat. § 116D.04, subd. 4a (2014) (authorizing the EQB to "identify alternative forms of environmental review which will address the same issues and utilize similar procedures as an environmental impact statement"). While this alternative environmental review is associated with the routing permit process, because certificate of need and routing permit proceedings typically occurred simultaneously, the MPUC generally has effective access to a MEPA-compliant environmental review while considering both applications.

Here the MPUC deviated from its usual practice and chose to conduct the certificate of need proceedings prior to the routing permit proceedings. As a result, the MEPA-compliant environmental review associated with the routing permit would not occur until after a decision was made on the certificate of need. Neither party challenges the underlying decision to bifurcate the proceedings, but FOH argues that making a decision on the certificate of need in the absence of an EIS violates MEPA. The MPUC and NDPC contend that requiring an EIS at the certificate of need stage is inconsistent

7

with the EQB's longstanding determination that the alternative environmental review conducted as part of the routing permit proceedings satisfies MEPA. We agree with FOH, and see this as a simple question of statutory interpretation that requires us to examine the plain meaning of two MEPA provisions.

Minn. Stat. § 116D.04, subd. 2a (2014), requires the responsible governmental unit to prepare a detailed EIS before engaging in any "major governmental action" that creates the "potential for significant environmental effects." MEPA defines "governmental action" as "activities, including projects wholly or partially conducted, permitted, assisted, financed, regulated, or approved by units of government." Minn. Stat. § 116D.04, subd. 1a(d) (2014). The MPUC's overall approval of the pipeline project constitutes a governmental action under this definition. No one disputes that the construction of the pipeline has the potential for significant environmental impacts, and all parties agree a MEPA-compliant environmental review is required at some point during the pipeline approval process. *See* Minn. R. 4410.4400, subp. 24 (2013) (mandating EIS for pipelines). Accordingly, it is clear that under subdivision 2a, a detailed EIS is required for the pipeline.

Having established that an EIS is required under subdivision 2a, we must turn to subdivision 2b, which states:

> If an environmental assessment worksheet or an environmental impact statement is required for a governmental action under subdivision 2a, a project may not be started and a final governmental decision may not be made to grant a permit, approve a project, or begin a project, until:
> (1) a petition for an environmental assessment worksheet is dismissed;
> (2) a negative declaration has been issued on the need for an environmental impact statement;

(3) the environmental impact statement has been determined adequate; or

(4) a variance has been granted from making an environmental impact statement by the environmental quality board.

Minn. Stat. § 116D.04, subd. 2b (2014). Relying on subdivision 2b, FOH contends that the issuance of a certificate of need constitutes a "final governmental decision" to grant a permit, and as such is prohibited until an EIS has been completed. We agree. For purposes of MEPA, the definition of permit includes a "*certificate*, or other entitlement for use or permission to act that may be granted or issued by a governmental unit." Minn. R. 4410.0200, subp. 58 (2013) (emphasis added). This unambiguous definition encompasses a certificate of need. All parties also agree that once the MPUC decides to grant a certificate of need, its decision regarding the issuance of that specific permit is final. Therefore, based on the plain language of subdivision 2b, the MPUC's issuance of a certificate of need constitutes a final governmental decision that is prohibited until the required environmental review is completed.

We are also not convinced that an EIS is not required before a certificate of need may be issued simply because the EQB has approved the environmental assessment associated with the routing permit process as an adequate alternative to a formal EIS. While the substance of this alternative review process may be equivalent to an EIS, its approval as an alternative by the EQB says nothing about when a final governmental decision to grant a permit may or may not be made in the absence of an EIS, which is specifically addressed by subdivisions 2a and 2b. Minn. Stat. § 116D.04, subds. 2a, 2b. We also note that the legislature could have clearly stated that a certificate of need for a

9

large oil pipeline was excluded from the environmental review requirements of MEPA, but it declined to do so. *See* Minn. Stat. § 116D.04, subd. 2a(a) (authorizing EQB to establish categories of action for which an EIS is mandatory and identifying certain actions for which an environmental assessment worksheet or EIS shall not be required). As a result, in the absence of a statutory exclusion or an explicit statement by the EQB that the approved routing permit application process supplants the need for environmental review at the certificate of need stage, subdivisions 2a and 2b must control our determination of whether environmental review is required. The unambiguous language of those provisions mandates that in a situation such as this, when the MEPA-compliant environmental review would not occur until after a certificate of need was issued, an EIS must be completed as part of the certificate of need proceedings.

Finally, we point out that requiring an EIS during the initial certificate of need proceedings affirms the emphasis MEPA places on conducting environmental review early on in the decision-making process. Specifically, MEPA states that, "[t]o ensure its use in the decision-making process, the environmental impact statement shall be prepared as early as practical in the formulation of an action." *Id.*, subd. 2a. This emphasis on timing is also consistent with the way federal courts have applied the National Environmental Policy Act (NEPA), which we may look to for guidance when interpreting MEPA. *See Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency*, 644 N.W.2d 457, 468 (Minn. 2002). The United States Supreme Court has explained that the early-stage environmental review similarly required by NEPA is critical because it "ensures that that important [environmental] effects will not be overlooked or

underestimated only to be discovered after resources have been committed or the die otherwise cast." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349, 109 S. Ct. 1835, 1845 (1989).

In this case, the completion of an EIS at the certificate of need stage satisfies the imperative identified above by ensuring decision-makers are fully informed regarding the environmental consequences of the pipeline, before determining whether there is a need for it. Moreover, completion of an EIS at the initial certificate of need stage seems particularly critical here because once a need is determined, the focus will inevitably turn to where the pipeline should go, as opposed to whether it should be built at all. We acknowledge that the MPUC did order a high level environmental review to be considered during the certificate of need proceedings. But as the MPUC noted, this review was not meant to serve as a substitute for the more rigorous and detailed review needed to satisfy MEPA, and it cannot take the place of a formal EIS now. Accordingly, we conclude the MPUC erred by not completing an EIS at the certificate of need stage as MEPA requires.

### D E C I S I O N

Where routing permit proceedings follow certificate of need proceedings, MEPA requires that an EIS must be completed before a final decision is made on issuing a certificate of need. Therefore, we reverse the grant of a certificate of need and remand to the MPUC to complete an EIS before conducting certificate of need proceedings consistent with this opinion.

**Reversed and remanded.**

11